CARLE et al., Plaintiffs in Error, v. CITY OF DE SOTO      156   443
et al.                                                     96a  ²668

Division Two, May 21, 1900.

1. Dismissal of Motion for New Trial: WRIT OF ERROR. Where a
   motion for a new trial was voluntarily dismissed in the trial court
   as to some of the defendants and the writ of error sued out of the
   appellate court improvidently includes such defendants, it will as to
   them be dismissed.

2. Negligence: MUNICIPAL LIABILITY: UNUSED PLATTED STREET. Al-
   len Place never was officially recognized by the city, no wagon was
   ever known to traverse it, and only an irregular footpath ran
   through it; it was a dry ravine except in rainy weather when con-
   siderable water gathered in it and emptied about 80 feet distant into
   a sewer in Boyd street, for the repairing of which sewer the city had
   contracted. The only reason for supposing Allen Place to be a
   street was because it had been so designated on a plat of an addi-
   tion dedicated to the city. But some unauthorized person dug a
   hole in this Allen Place, which filled with the water from the rains
   that lasted for a day or two, and on the next day, which was Sun-
   day, plaintiff's six year old boy was found therein a little after dark,
   having been drowned. No part of the records in the city council
   directing the sewer to be constructed, nor its contracts or estimates
   of costs, in anywise referred to Allen Place, nor was it shown how
   long the hole had been there previous to the drowning of the child,
   nor by whom it had been dug. Held, that the city was not liable
   for damages for the death of the child because of negligence to keep
   its streets in a safe condition; held, also, that the records of the city
   council, referring to the contract for the construction of the sewer
   in Boyd street, were incompetent evidence for showing Allen Place
   had been recognized by the city as a street or that the hole had been
   dug by its authority.

Error to St. Louis City Circuit Court.—Hon. James E.
Withrow, Judge.

AFFIRMED.

*John L. Thomas* for plaintiffs in error.

(1)    If the court should hold that the Herman contract for the repair of the Boyd street sewer did not bind the city as a contract because no ordinance was passed, and that the catch-basins did not come within the meaning of the "extra work" clause therein, and that the resolution in regard to the catch-basins did not bind the city to pay for them, yet the city is liable in this case on the ground that it was a tortfeasor.    The loss of plaintiffs' child and the subsequent damage to them was sustained, not as a consequence of any act in which they participated or had knowledge. The plaintiffs can not be charged with knowledge of any infirmity of the attempted contract between the city and those who dug the catch-basin or caused it to be dug.    The city possessed the undoubted authority to repair the Boyd street sewer and to dig a catch-basin to protect it from gravel and stone, and the mere fact that, in attempting so to do it, it did not conform to the requirements of its charter (which was art. 4, chap. 30, R. S. 1889) furnishes no sufficient reason for exempting it from liability for the death of the child.    Soulard v. St. Louis, 36 Mo. 546; Hilsdorf v. St. Louis, 45 Mo. 94; Hickerson v. Mexico, 58 Mo. 61; Hunt v. Boonville, 65 Mo. 620; Dooley v. Kansas City, 82 Mo. 444; Worley v. Columbia, 88 Mo. 106; Brown v. Cape Girardeau, 90 Mo. 377; Donohue v. Kansas City, 136 Mo. 577; Collinsworth v. Whatcomb, 47 Pac. Rep. 439; Salt Lake City v. Hollister, 118 U. S. 256; Howell v. Buffalo, 15 N. Y. 512; Sheldon v. Kalamazoo, 24 Mich. 383; Lee v. Sandy Hook, 40 N. Y. 447; Clayton v. Henderson (La.), 44 L. R. A. 474. (2)    It is now well settled in this State that a city is liable for negligence in not guarding excavations made in a street, though they be made by an independent contractor.    Welch v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 490;

s. c., 84 Mo. 632; Norton v. Kansas City, 97 Mo. 537; Haniford v. Kansas City, 103 Mo. 172.

*Sam Byrns* and *Louis F. Dinning* for defendants in error.

(1) Plaintiffs tried this case in the court below on the theory that defendant city, "caused the catch-basin in Allen Place to be dug, and negligently left it unguarded, unfenced and unprotected," and upon this theory they must stand or fall in this court. Walker v. Owen, 79 Mo. 568; Holmes v. Braidwood, 82 Mo. 617; Witascheck v. Glass, 46 Mo. App. 214; Martinowsky v. Hannibal, 35 Mo. App. 79; Fell v. Coal Mining Co., 23 Mo. App. 224; Brooks v. Yocum, 42 Mo. App. 521. (2) The acts of defendant city as a municipal body are evidenced by ordinances, duly passed, without which the corporation is not bound, even where it has power to act in the matter. Thrush v. Cameron, 21 Mo. App. 394; Rumsey Mfg. Co. v. Shell City, 21 Mo. App. 175; Commissioners v. Ross, 46 Ind. 404; McDonald v. Mayor, 68 N. Y. 23; Butler v. Charleston, 7 Gray, 15; 16; Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 678; Hill v. Rich Hill Coal Mining Co., 119 Mo. 30. (3) The city of De Soto,. as a municipality, could not authorize or employ anyone to dig the catch-basin in question, except it was done in writing, which of course, would have to be preceded by an ordinance to that effect. Sec. 3157, R. S. 1889; Crutchfield v. Warrensburg, 30 Mo. App. 456; Peterson v. Mayor, 17 N. Y. 449; Johnson v. School District, 67 Mo. 321. (4) The records of the city council offered by plaintiff did not tend in the slightest degree to prove a contract or an ordinance on the part of defendant city, authorizing anyone to dig the catch-basin in question. (5) "The mere dedication of a city street to public use by means of a recorded plat, does not of itself render the municipality liable for negligent failure to

keep the street in repair. It is necessary further to show that the street in question has been accepted before that liability begins. Even an acceptance or a dedication transferring the title to the street in trust for the public, does not impose a liability to keep the dedicated land in repair as a street. The latter obligation does not attach until the corporation, in some official and appropriate manner, has invited or sanctioned its use as a street by the public. Baldwin v. Springfield, 141 Mo. 212; Bassett v. St. Joseph, 53 Mo. 290; Craig v. Sedalia, 63 Mo. 417; Hunter v. Weston, 111 Mo. 184; Downend v. Kansas City, 156 Mo. 60; Walker v. Kansas City, 99 Mo. 647; Moore v. Cape Girardeau, 103 Mo. 470; Young v. Webb City, 150 Mo. 333.

GANTT, P. J.—This is an action by plaintiff in error against the city of De Soto and Otto Herman for damages in the sum of five thousand dollars, growing out of the death of plaintiff's minor child, caused by falling into a hole dug into a platted street in said city, known as "Allen Place."

The cause was commenced in Jefferson county, but by change of venue was sent to the city of St. Louis, and was tried in division No. 3 of the circuit court of said city. A verdict was rendered in behalf of the city of De Soto, and Herman. A motion for new trial was filed as to them, but on the 29th day of March, 1895, the plaintiffs voluntarily withdrew said motion as to defendant Herman, and the judgment in his favor stands unappealed from, and by consent remains in full force and effect. Under this state of facts the writ of error as to said defendant was improvidently sued out, and is therefore dismissed.

The errors assigned as to the defendant city alone remain for disposition.

The city of De Soto is a city of the third class, and has been such since February 10, 1883.

Omitting the caption and formal averments of the incorporation of defendant city, the petition is as follows:

"That during said year the defendant city of De Soto owned a street within its corporate limits known as 'Allen Place,' which was then, and is now, open for public use and travel; that a short time prior to the 27th day of November, 1892, the defendants caused to be dug in said street an excavation about eight feet deep and eight feet in diameter, which immediately filled with water; that defendants wilfully, wantonly, negligently and carelessly left said excavation in said street uncovered and unguarded, and plaintiffs' minor son, Frederick J. Carle, then nearly six years old, while in said street, on said day, fell into the water in said excavation, and was drowned, by reason of which they have been deprived of the services and earnings of their said son during his minority, and of his companionship and society during their joint lives. Plaintiffs therefore state that the death of their said son, and the consequent loss to them as above, was the direct result of the willful, wanton, negligent and careless act of the defendants in leaving said excavation uncovered, unprotected and unguarded, by which they have been damaged in the sum of five thousand dollars, for which they ask judgment."

The answer of the city is as follows:

"Now comes the city of De Soto, and by leave of court first obtained, files this its answer to the amended petition of plaintiffs filed herein. And for such answer this defendant admits that it is a municipal corporation—a city of the third class duly incorporated and existing under and by virtue of the laws of the State of Missouri. This defendant admits that plaintiffs are husband and wife and that they are the parents of Frederick J. Carle, deceased. This defendant further answering denies each and every allegation in plaintiffs' said amended petition contained. This defendant for

further answer avers that the death of the said Frederick J. Carle was brought about by the carelessness and negligence of the plaintiffs directly contributing thereto. This defendant having fully answered the said amended petition of plaintiffs, prays to be discharged thereof and for judgment against the plaintiff for its cost in this behalf expended."

Reply was filed, denying new matter.

The evidence disclosed that plaintiffs lived on the corner of Fourth street and Allen Place. Allen Place is a street forty feet wide running east and west from Fourth street and Sixth street, only. Plaintiffs' house fronts on Fourth street. Allen Place was and is a street on paper. No ordinance of the city has ever required it to be graded or improved. No public money has ever been expended on its improvement. The great weight of the testimony justifies us in saying that Allen Place was only a street by virtue of a dedication by the plat of Rathbun and Donaldson's addition to the city, designating it as a street.

The only official recognition claimed by plaintiffs that was ever given this place as a street, was a general ordinance passed years ago which after naming certain streets, concluded with these words, "all the streets not mentioned in this article shall remain as shown by the original plat on file in the office of the recorder of Jefferson county, Mo." As this was a part of a subsequent addition it can hardly be said to have any reference to Allen Place. Indeed, we conclude this so-called "place" was an untravelled ravine. No buggy or wagon was ever known to traverse it and only an adventurous horseman ever tried it horseback. An irregular foot path ran through it. This ravine is dry except in rainy weather, when considerable water gathers in it, and empties into the Boyd street sewer, about eighty feet from the north side of said Allen Place. In November, 1892, a hole was dug in the north part of Allen Place about four feet deep.

This hole was filled with water, from a rain that fell on Friday night and Saturday. On Sunday afternoon plaintiffs' child, nearly six years old, was found drowned in this hole. About an hour before he was found, his mother saw him on Fifth street and called him and he answered he would come. This hole could not be seen from plaintiffs' residence, and they did not know of its existence till the child was drowned. To show that the said hole was dug by and under the authority of the city, the plaintiffs offered the following proceedings of the city council, under dates of June 6th, August 1st, August 21st, and September 6th and 12th, 1892, which said entries are as follows:

Record, June 6: "City Councilman Becker reported that Boyd street sewer had caved in at one place and that it was undermined at several places; also that the bottom was washed out. Moved and seconded that the street committee with the street commissioner make an estimate of what it will cost to repair the Boyd street sewer in proper shape. Carried."

Record, August 1: "Moved and seconded that L. D. McGlashion be employed by the council to examine the Boyd street sewer as to its condition, etc., and report at next meeting, if possible. Carried."

Record, August 21: "McGlashon handed in a report of the estimate of the cost of repairing the Boyd street sewer as requested by the council, which was read and is as follows:

" 'Estimate, using Brick: Excavation of gravel now deposited in sewer by rainfall and for invert arch, 400 cubic yards at 50c, $200; repair of walls and rock excavations in sewer, $100; 62 M. hard brick laid in cement, at $19, $1,178; one catch-basin at each cross street, 3 in all, $20 each, $60; excavation for sump at entrance to sewer, $50; total cost, using brick, $1,588. Estimate using granitoid: 770 square feet granitoid at 15c, $1,155; all other expenses, being the same as if brick were used, $410; total, $1,565.'

Vol. 156 mo—29

"On motion of Councilman Hopson, the report was received and placed on file.

"Moved by Councilman Hamel that the clerk be instructed to advertise for bids for repairing the Boyd street sewer with granitoid or glazed brick bottom, laid in cement mortar. Carried.

"Moved by Hamel that McGlashon be instructed to draw up proper specifications for the work to be done on Boyd street sewer. Carried."

Record, September 6: "Moved and seconded that bid of Otto Herman for repairing the Boyd street sewer be read. Carried. Being as follows: 'I hereby agree to do the work and furnish all materials required for the repairs of Boyd street sewer according to the specifications, for the amount of eleven hundred and sixty-five dollars.'

"Moved and seconded that the marshal be instructed to notify G. D. Hawkins, agent for the I. M. & S. R. R. Co., to have the sewer running across the railroad property on Boyd street opened up inside of twenty days. Carried.

"Moved and seconded that the street committee with L. D. McGlashon prepare a contract for the repairing of Boyd street sewer. Carried."

Record, September 12: "A contract for repairing Boyd street sewer was drawn up by L. D. McGlashon (but not signed by anyone) was read. Councilman Becker moved that the part of said contract relating to the catch-basins be stricken out and the contract be awarded to Otto Herman at his bid. Carried."

Plaintiffs also offered in evidence the report of L. D. McGlashon, engineer, to the city council, as follows:

"To the Honorable Mayor, and City Council of the City of De Soto:

"In compliance with your instructions I have examined the sewer on Boyd street with a view to repair the same in the most durable and least expensive way.

"I have the honor to report as follows:

"The best way to repair where the bottom is not solid rock, is to construct an invert arch with a radius of about eight feet, the excavation for it to be made to conform to the shape of the invert, and the material used clinker vitrified brick and cement. The thickness of the arch to be four inches thick, that is, the brick to be laid on edge and lengthwise of the sewer, breaking joint at the center of each brick. The connection of the arch with the walls should be such that the full depth of the brick shall have bearing where practicable. After the excavation shall [have] been properly made, it shall be coated or overlaid with cement and the brick at once laid therein; to repair the above mentioned part in this manner would deepen the sewer, giving greater capacity, make a permanent bottom and secure the walls. Where the bottom is solid rock and has been left rough, it should be drilled and quarried out uniformly, thus lowering the bottom and making use of the natural rock in place as part of the walls. Where walls are broken they should be repaired, and where cement has been cut out by the abrasion of stones or other material, they should be pointed with cement. Catch-basins, two feet inside diameter, should be made at the upper side of each cross street, so that the sewer shall have proper ventilation and so that the surface water from the gutter may enter the sewer. Provisions should be made to keep the sewer clear of obstruction and its capacity, counting its grade, extended a sufficient distance beyond its mouth to prevent all possible chance of causing a deposit near enough to affect the sewer. This might be done by making a sump or excavation just above the entrance to the sewer and about two feet deeper than the sewer, and making the bottom of the catch-basin about the same below their junction with the sewer and by conferring with the railroad company, getting them to deepen the waterway under their tracks. I have not been able to ascertain the cost of the

work according to the above plan; I think the best way to do that would be to get the bids. A very much cheaper and more temporary way to repair the sewer might answer for the time. I have only thought of a permanent one. I would say in conclusion that if the stones and gravel are not kept out of the sewer, and the waterway is not deepened under the tracks, the sewer will become worse than useless; it will fill or nearly fill, so that the water will be turned on the surface of the street, cutting and destroying it."

Plaintiff offered in evidence the contract entered into by Otto Herman and the city for the repair of Boyd street sewer, dated September 13, 1892. Said contract, after reciting that it was made by Otto Herman, party of the first part, and the city of De Soto, party of the second part, and that the contract had been awarded to said Herman to repair Boyd street sewer, provides: "The said Otto Herman hereby agrees to do the work mentioned in substantial and workmanlike manner in conformity with and obedience to the direction which may from time to time be given by the superintendent or such person as the said second party may appoint, and in accordance with the following specifications; and to furnish all material and labor for the whole work mentioned above. Wherever the bottoms of the walls are exposed the excavation to receive the concrete shall be made in the bottom of the sewer to conform to a depth of one and two-tenths feet at the center of the invert, and shall be done in such a manner that the outer or lower line of the arch shall intersect the bottoms of the walls at least five inches from their inner surface, and the inner or upper line of the arch shall coincide with the lower inside edges of the walls. Wherever the bottoms of the walls are not exposed the invert or segment of the circle shall connect each wall with a vertical bearing of at least five inches. All excavated material shall be promptly removed by the contractor. The bottom of the sewer shall be paved with concrete at least

five inches in depth.   The concrete shall consist of one part
Portland cement, two parts sand and four parts gravel or
broken stone, and shall be so mixed that each pebble or stone
will be well covered with the mortar.   All shall be rammed
so that no voids shall exist, but shall become one solid mass.
The cement mortar used in repointing the walls shall consist
of one part Portland cement and two parts clean, sharp sand
and shall be mixed in small quantities and used immediately
after.   No mortar shall be used after having stood twenty-
five minutes.  Before pointing the joints shall be freed from
all crumbled mortar and thoroughly wetted.  All mortar
used in the repairing of this sewer shall be cement mortar;
no lime shall be used.   The repairing of the arch shall be
done with hard brick and cement.  The repairing of the
walls shall be done with stone, concrete and cement.   [The
sumps or catch-basins at the entrance to the sewer shall be
of such depths and dimensions as in the judgment of the
person directing the work for the second party will be suffi-
cient to allow heavy material to be deposited before the
water enters the sewer.]

General Stipulations.

"1.   The contractor shall not sublet any of the work
embraced in this contract.

"2.   Whenever the contractor is not present on the
work, orders will be given to those having immediate charge
thereof and will by them be strictly obeyed.

"3.   The first party shall do such extra work as may
not be implied in this contract and the price thereof shall
be fixed by the person in charge representing the second
party.

"4.   The first party will observe all laws and ordi-
nances controlling or limiting those engaged on the work,
and the said first party, contractor, and his securities hereby
expressly bind themselves to indemnify and save harmless

the city of De Soto from all suits or actions of every description brought against the said city on account of any injuries or damages received or sustained by any party or parties, by or from the acts of the said contractor, his servants or agents in doing the work herein contracted for, or by any negligence in guarding the same.

"5.   The work embraced in this contract shall be begun within ten days after the signing of this contract and all the work embraced shall be completed sixty days thereafter.

"6.   In consideration of the completion by the first party of all the work embraced in this contract in conformity with the specifications and stipulations herein contained, the city of De Soto, party of the second part, agrees to pay the said first party eleven hundred and sixty-five dollars.

"7.   All payments under this contract shall be made upon the estimate of the person employed by the second party to direct or superintend the work, and said estimate approved by the mayor of the said city of De Soto, said estimate to be made on or before the tenth day of January, A. D. 1893.

"For the faithful performance of the terms and stipulations of this contract the said Otto Herman, as principal and Chas. Karte, as security, hereby bind themselves, their heirs and executors and administrators unto the city of De Soto in the penal sum of five hundred dollars lawful money of the United States, conditioned that in the event the said Otto Herman shall faithfully perform the foregoing contract according to the terms thereof, and shall, as soon as the work is finished, pay to the proper parties all amounts due for material and labor used and employed in the performance thereof, then this obligation to be void, otherwise in full force and after effect.

"In witness whereof the said Otto Herman, as principal, and Chas. Karte, as security, parties of the first part, have hereunto set their hands and seals respectively and the city

of De Soto, party of the second part, acting through the mayor of said city, has subscribed these presents the day and year first above written."

Each of said record entries and said contract and bond were upon the objection of the city excluded as to said defendant city, and plaintiffs excepted. No other evidence was offered to show the city was responsible for said excavation.

At the close of plaintiffs' evidence the defendant city interposed a demurrer to the evidence, and the court sustained the same, to which action plaintiffs excepted.

The questions for solution arise upon the action of the circuit court in excluding the various proceedings of the city council as not tending to connect the city in any manner with the making of the hole or excavation in which the unfortunate child was drowned.

It is difficult to see how the court could have ruled differently. This hole was not a part of Boyd street sewer, and every record entry offered and every reference to a contract, report or bond was to the repairing of Boyd street sewer.

Those records and documents were absolutely irrelevant to the issue on trial and when this is said the subject is exhausted unless plaintiffs' further contention is tenable, and that is as follows:

The engineer in draughting the contract for the Boyd street sewer inserted the following clause: "The sumps or catch-basins at the entrance to the sewer shall be of such depths and dimensions as in the judgment of the person directing the work for the second party will be sufficient to allow heavy material to be deposited before the water enters the sewer." This clause was expressly stricken out by the city council on the 12th day of September, 1892.

Section 3 of the general stipulations of the contract between the city and defendant Otto Herman, to repair the

aforesaid sewer, says: "The first party shall do such extra work as may not be implied in this contract and the price thereof shall be fixed by the person in charge representing the second party."

Now if we correctly interpret the learned counsel's position it is that it is true as the city contends, that the city council in the most unequivocal manner struck out the provision looking for catch-basins at the mouth of the Boyd street sewer, and that with that clause eliminated, the contract was executed by the city and the contractor, Herman, but that the third section of the said contract included it as "extra work not implied in this contract." We confess our inability to appreciate this argument. Having expressly excluded a provision for building or preparing sumps or catch-basins as a part of Herman's duty under his contract, what basis is there for the presumption that catch-basins or sumps were to be dug at all. Did the council not purposely exclude such a presumption by positive enactment? It so appears to us, but as this hole was not at the mouth of the sewer we are utterly at a loss to perceive how it has the most remote connection with the Boyd street sewer, and we think the court was clearly right in excluding all these records and papers.

After the exclusion of this evidence the record discloses that plaintiff from that time until the close of the case, only introduced their evidence against the members of the council as individuals and saved no exceptions to the ruling of the court thus limiting the evidence; this being so, of course there is nothing to review in this court on this writ of error by plaintiffs.

Learned counsel for plaintiffs, however, contends that notwithstanding it should be held that the Herman contract for the repair of the Boyd street sewer did not bind the city as a contract because no ordinance was passed, and that the catch-basins did not come within the meaning of the "extra

work" clause therein and that the resolution in regard to catch-basins did not bind the city to pay for them, still the city is liable as a tort-feasor.

His contention is that the city had the power, and the mere fact that it did not conform to its charter will not exonerate it. Conceding without deciding the proposition, it can not avail plaintiffs in this case, first, because the averments of their petition do not authorize such a theory; secondly, because there was as against the city no evidence that it had ever opened Allen Place as and for a street or highway, and no evidence was introduced to bring home notice to the city that some unauthorized person had dug the hole in one of its streets and left it in a dangerous condition, nor evidence that it had been dug such a length of time as would authorize the jury to infer notice of said excavation. The cause was not tried on such a theory. No instruction was asked on such a view of the evidence and the trial court can not now be put in error for not adopting a theory which plaintiffs never suggested to it.

Our conclusion is that upon the record before us the writ of error must be dismissed as to defendant, Herman, and that the judgment must be and is affirmed as to the city of De Soto and it is so ordered. *Sherwood* and *Burgess*, *JJ.*, concur.